UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL R. CHAPMAN,                )<br>                                                          )<br>            Plaintiff                            )<br>                                                          )<br>                                                          )   Civil No. 04-103-B-H<br>      v.                                            )<br>                                                          )<br>MAINE DEPARTMENT OF           )<br>CORRECTIONS, et. al,                 )<br>                                                          )<br>            Defendants                      ) | |

## RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT BY MARTIN MAGNUSSON

In a companion recommended decision I have today addressed the motion for summary judgment filed by the medical defendants in this case. Because the statement of material facts pertaining to defendant Martin Magnusson's separate motion for summary judgment (Docket No. 82) differs in some important aspects from those facts deemed material for resolution of the medical defendants' motion, I set them forth separately below. I recommend that the court grant Magnusson's motion.

*Statement of Material Facts*

Martin Magnusson is the Commissioner of the Maine Department of Corrections (DOC) and was at the time of the events alleged in Michael Chapman's complaint. (Def.'s SMF ¶ 1.) Magnusson is familiar with the contract that the DOC entered into with Prison Health Services, Inc. (PHS) in which PHS contracted to provide medical services to prisoners of the DOC at the time of the events alleged in Michael Chapman's complaint. (Def.'s SMF ¶ 2.) Under the contract, the vast majority of these services

1

were provided by PHS medical personnel, although some nursing services were provided by DOC personnel who were supervised by PHS medical personnel who held higher licenses. (Def.'s SMF ¶ 3.) The contract required PHS to observe and comply with all federal, state, local and municipal laws, ordinances, rules and regulations, court orders, and departmental policies and procedures, in any matter affecting the contract. (Def.'s SMF ¶ 4.) The contract required PHS' administrative staff to be responsible for ensuring "adherence to current and future State, federal, and local laws, regulations, court orders, Departmental directives, and policies and procedures of DOC for the health care units and medical staff." (Def.'s SMF ¶ 5.) The contract required PHS to provide orientation training to incoming staff. (Def.'s SMF ¶ 6.) The contract required PHS to provide a minimum of twelve hours per employee per year of in-service training to DOC and PHS personnel who provided medical/health care services. (Def.'s SMF ¶ 7.) The contract required that all personnel comply with current and future State laws, including licensing requirements. (Def.'s SMF ¶ 8.) The contract required PHS to make referral arrangements with medical specialists for treatment if those prisoners had problems that needed treatment beyond the scope of services provided on site. (Def.'s SMF ¶ 9.) The cost of treatments incurred outside of the facility was the responsibility of PHS pursuant to the contract. (Pl's Resp. SMF ¶ 9.) The contract required PHS to initiate a Quality Assurance Program to assure that quality health care services were provided to DOC prisoners. (Def.'s SMF ¶ 1.) Under the contract PHS was required to establish a Medical Utilization Review process for patient care. That committee was responsible for recommending policies and procedures that could not be implemented unless approved by Magnusson. (Pl.'s Resp. SMF ¶ 10.)

Magnusson relied on PHS to meet the terms of the contract it entered into with the DOC to provide medical services. (Def.'s SMF ¶ 11.) A physician assigned by PHS provided for supervised medical services to prisoners at each correctional facility. (Def.'s SMF ¶ 12.) In a September 2001 letter to an executive at PHS, Denise Lord of the DOC expressed concern about the quality and level of medical care PHS was providing to prisoners. (Pl.'s Resp. SMF ¶ 12.)[1] The Contract Administrator for PHS had the contractual obligation of insuring the training of medical personnel and the provision of medical services for DOC prisoners. (Def.'s SMF ¶ 13.) Magnusson had the overall responsibility for insuring compliance with the contract and he delegated compliance monitoring to associate commissioner Denise Lord. (Pl.'s Resp. SMF ¶ 13.) Magnusson did not have a direct role in providing medical services to prisoners of the Department or supervising medical staff at the correctional facilities. (Def.'s SMF ¶ 14.) He did have a contractual role in approving all policies and procedures for the operation of the medical program. (Pl.'s SAMF ¶ 14.) Magnusson never approved any policy or custom under which prisoners of the Department were deprived of adequate medical care. (Def.'s SMF ¶ 15.)

If and when deficiencies in care were noted by outside auditors, the Department worked with PHS to set up a correction action plan to address those deficiencies. (Def.'s SMF ¶ 18.) Magnusson knew nothing about Michael Chapman's table saw injury or the treatment Chapman received for that injury when it occurred. (Def.'s SMF ¶ 19.)

In response to Magnusson's motion for summary judgment Chapman also filed a statement of additional material facts. The first twenty-one paragraphs of that statement relate to the injury and course of treatment and are identical to the assertions supplied in conjunction with the medical defendants' motion. I incorporate here those parallel factual assertions that are set

---

[1] Chapman attempts to qualify Magnusson's assertion that a physician was assigned by PHS by referencing this correspondence and concluding, "Dr. Englander was unable to perform this function satisfactorily." I fail to see how the record evidence supports that qualification.

forth in the companion recommended decision. Chapman also supplies the following additional material facts in conjunction with this motion.

The economic burden is on PHS for the payment of services rendered off-site by a specialist. (Pl.'s SAMF ¶ 22.) The contract defines a Medical Audit Committee, with which PHS is contractually obligated to work, whose responsibility it is to recommend, within DOC guidelines, policies and procedures that are necessary for the operation of the medical program and these policies and procedures are not to be implemented unless and until approved by Magnusson as Commissioner of Corrections. (Pl.'s SAMF ¶ 23; (Def.'s Resp. SAMF ¶ 23.) Under the contract, statistical reports reflecting utilization data are to be submitted to the DOC on a monthly basis and a quarterly pharmacy report is to be submitted to the Contract Administer. (Pl.'s SAMF ¶ 25; Def.'s Resp. SAMF ¶ 25.) Under the Contract, when complaints are raised by the inmates, PHS is to deal with them in accordance with DOC regulations. (Pl.'s SAMF ¶ 26.) A quality assurance program is required of PHS pursuant to the contract. (Pl.'s SAMF ¶ 27.)

Several of Dr. Beauchesne's (a doctor who saw Chapman on an out-patient basis) patients from the prison did not follow-up with appointments or attended their appointments sporadically. (Pl.'s SAMF ¶ 28.)

Leonard Sherwood is a Physician Assistant who worked for PHS until April of 2001. (Pl.'s SAMF ¶ 29.) Sherwood sent a letter to Commissioner Magnusson, among many others, that he was resigning for being asked to practice in an unsafe manner among many other observations and concerns. (Pl.'s SAMF ¶ 30.)

*Discussion*

Supervisory officials are liable under 42 U.S.C. § 1983 only if they fail promptly to provide an inmate with needed medical care, they deliberately interfere with the prison doctors' performance, or they tacitly authorize or are indifferent to a prison doctor's constitutional violations.  See, e.g., Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir.1990). A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions. Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir.1995).   Prison officials cannot substitute their judgment for a medical professional's prescription. Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir.2000).

Applying these general rules for supervisory liability in the context of Magnusson's actions in this case, it is readily apparent that Magnusson has no "affirmative link" to the medical treatment administered to Chapman by Turner or Englander.  See Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (discussing supervisory liability in an Eighth Amendment prison case). Furthermore, a second glaring problem with Chapman's supervisory liability theory is that in the companion recommended decision I have already concluded that Turner and Englander did not commit a constitutional violation and, therefore, the necessary predicate for supervisory liability is absent.  Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996.) Nor does this record establish any affirmative supervisory link between Magnusson and the correctional officers responsible for transportation of Chapman to off-site medical appointments.  In fact, the record is silent about who is responsible for the failure to transport Chapman in accordance with his scheduled appointments.

Instead, what Chapman attempts to develop on this record is a policy or custom liability for Magnusson as the Commissioner of the DOC.  The gist of the record evidence is that

Magnusson, as commissioner, is the person ultimately responsible for approving the policies and procedures implemented by PHS through the Medical Audit Committee. As I noted in my initial recommended decision, this sort of policy or custom theory is akin to the type of claim analyzed in City of Canton v. Harris, 489 U.S. 378 (1989); it is in the nature of an official capacity suit against the DOC Commissioner and thus becomes a suit against the State of Maine itself. As a general matter, "states are immune under the Eleventh Amendment from private suit in the federal courts, absent their consent." Greenless v. Almond, 277 F.3d 601, 606 (1st Cir.2002). This immunity extends to any entity that is an "arm of the state." In re San Juan Dupont Plaza Hotel Fire Litig., 888 F.2d 940, 942 (1st Cir.1989); see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (holding that an "arm of the state" enjoys the state's sovereign immunity, but that such immunity does not extend to municipal corporations or other political subdivisions). In any event, as a statutory matter, neither a state nor its departments are "persons" under 42 U.S.C. § 1983 and a § 1983 action cannot be maintained against them. See Will v. Mich. Dept. State Police, 491 U.S. 58, 71 (1989).

*Conclusion*

Based upon the foregoing I recommend that the court **GRANT** Martin Magnusson's motion for summary judgment (Docket No. 82).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

      Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 14, 2005

                                            /s/ Margaret J. Kravchuk
                                            U.S. Magistrate Judge